OF THE

## STATE OF NEW JERSEY,

ON APPEAL FROM THE COURT OF CHANCERY,

AND PREROGATIVE COURT,

NOVEMBER TERM, 1887.

GEORGE R. WILKINS, executor, appellant,

*v.*

JAMES F. WILKINS, executor, respondent.

In 1875 the appellant was indebted to his father $2,500, represented by two promissory notes. He obtained a discharge in bankruptcy in December, 1875, his father proving the full amount of his claim in the proceedings, and signing a written consent to his discharge. The father had mortgaged all his real estate for $2,000, on which the appellant paid the interest from January, 1875, to August, 1878. In May, 1878, the father made his will, containing the following provisions as to appellant: "And to each of my dear sons, I hereby give

and bequeath the sum of $500, the same to be paid and allowed to them and each of them in the way and in the manner following, that is to say : To my dear son George R. Wilkins I hereby give and bequeath the sum of $500, the full and entire amount of which having been already advanced and paid to him, my son George, at various times, and for a part of which I now hold his promissory note of hand for $400, the same making and constituting a portion of my said personal estate, and which, together with a loan of $2,000, with lawful interest accruing thereon, and for which I now hold and have in my possession also his promissory note of hand, and which said loan of $2,000 was taken up and borrowed by me for, and at the earnest request and urgent solicitation of him, my said son George, and for his own personal and sole use, purpose and benefit alone, and for which said loan I gave my personal bond, with a mortgage given to secure the payment thereof, with the interest thereon accruing. The payment of which both principal and interest he, my said son, then and there assumed (the interest on the same he having paid and discharged in full and in good faith, as the same has become due, until the date hereof), said bond and mortgage being at this time an encumbrance and lien upon my real property and estate, that is to say : Upon my three several brick dwellings, situate and known as numbers 174, 176 and 178 Plane street, Newark, aforesaid, and making and constituting an indebtedness on my said real property and estate, until the same shall be fully paid and discharged therefrom, the same having been made and incurred by me for and at the solicitation and persuasion as aforesaid of my said son George, all which was had and used for his purposes alone. Therefore, it is my will and desire, and I do hereby order and direct that, unless the said loan of $2,000, together with the said note for $400, *with lawful interest*, shall be sooner paid and discharged by him, my said son George, to me, or to my said executors, their successors or assigns, the same shall be deemed and taken, considered and accounted for, and accepted by him for and in lieu, and in place of any and all said legacies and bequests, and in full therefor, to the amount of $2,500—the amount of the two said notes."—*Held*, that appellant was only subject to the deduction of the $2,500 from his share of the estate, and not the additional amount represented by the interest on the $2,000 accrued from August, 1878.

William Wilkins, a resident of the city of Newark, died Dec. 22d, 1884, leaving a will dated May 21st, 1878, with a codicil dated Sept. 2d, 1879, which will and codicil were admitted to probate by the surrogate of Essex county Jan. 2d, 1885.

He left, him surviving, his widow, Phœbe H. Wilkins, three sons, William H., George R. and James F., two grandchildren, William Kinsey Wilkins and Sarah Elizabeth Wilkins, children of his deceased son, Theodore F. Wilkins, and two grandchildren, Frank Phillips and Esther Phillips (now Snyder), children of

his deceased daughter, Esther A., wife of Isaac Phillips, also then deceased.

By this will his wife, Phœbe H. Wilkins, and his sons, the appellant, George R. Wilkins, and Theodore F. Wilkins, were appointed his executors. By the codicil, which recited the death of Theodore, he appointed as executors his wife and his sons George R. Wilkins, the appellant, and William H. Wilkins, and the respondent, James F. Wilkins.

The will was proved by respondent, who qualified as executor. Subsequently, and on Nov. 3d, 1886, the appellant, George R. Wilkins, who was a non-resident, also qualified as executor.

The testator's wife, Phœbe H. Wilkins, died in Nov., 1885.

William H. Wilkins died Nov. 9th, 1886, leaving, him surviving, two children, Leroy and Mabel.

Frank Phillips, one of said grandchildren, died Feb. 10th, 1886. His sister Esther is still living, and is the wife of Robert Snyder.

The testator's estate consisted of three lots of land, with dwelling-houses erected thereon, on Plane street, in the city of Newark, on which there was a mortgage originally for $2,000, and on which there was due, at the date of the testator's death, $1,800, and a small amount of personal property, which was sold after the testator's death, and realized the sum of $89.75.

The real estate has also been sold by the executors *pendente lite* for the sum of $12,300, less $1,841.25, the amount due on the mortgage at date of sale—net, $10,460.

There were found among the testator's effects two promissory notes, signed by the appellant, George R. Wilkins, one for $400, dated May 20th, 1873, and one for $2,100, dated Aug. 15th, 1873, and also a promissory note signed by his son Theodore F. Wilkins, for $500, dated Nov. 9th, 1874.

The appellant, George R. Wilkins, filed, on Aug. 3d, 1875, a petition in the United States district court for the district of New Jersey, to be adjudicated a bankrupt. These two notes for $400 and $2,100 were both proved by the testator in said bankruptcy proceedings, and the testator was one of the creditors who consented to the discharge of the appellant. The appellant was

Wilkins *v.* Wilkins.

discharged in bankruptcy on Dec. 14th, 1875, this being over two years before the date of the will, and nine years before testator's death.

The bill in this case was filed by one of the executors, James F. Wilkins, to obtain a construction of that portion of the will which gives a legacy of $500 to each of his sons, and which contains a recital of loans of $2,500 to the appellant, and of the residuary clause of the will, by which the residuary estate is devised to his sons equally.

The contention of the respondent, in which he was sustained by the court below, is that the entire amount of the notes of $2,100 and $400, given by the appellant, should be deducted, not only from the special legacy of $500, but also from the appellant's share in the residuary estate, and the court below also directed that interest on $2,000 of this $2,500 should also be thus deducted.

The following is a copy of so much of said will as is involved in this case:

"And to each of my dear sons I hereby give and bequeath the sum of $500, the same to be paid and allowed to them and each of them in the way and in the manner following, that is to say: To my dear son George R. Wilkins I hereby give and bequeath the sum of $500, the full and entire amount of which having been already advanced and paid to him, my said son George, at various times, and for a part of which I now hold his promissory note of hand for $400, the same making and constituting a portion of my said personal estate, and which, together with a loan of $2,000, with lawful interest accruing thereon, and for which I now hold and have in my possession also his promissory note of hand, and which said loan of $2,000 was taken up and borrowed by me for and at the earnest request and urgent solicitation of him, my said son George, and for his own personal and sole use, purpose and benefit alone, and for which said loan I gave my personal bond, with a mortgage given to secure the payment thereof with the interest thereon accruing. The payment of which, both principal and interest, he, my said son, then and there assumed (the interest on the same he having paid and discharged in full and in good faith as the same has become due until the date hereof), said bond and mortgage being at this time an encumbrance and lien upon my real property and estate, that is to say: Upon my three several brick dwellings, situate and known as numbers 174, 176 and 178 Plane street, Newark, aforesaid, and making and constituting an indebtedness on my said real property and estate until the same shall be fully paid and discharged therefrom, the same having been made and incurred by

Wilkins *v.* Wilkins.

me for and at the solicitation and persuasion as aforesaid of my said son George, all which was had and used for his purposes alone. Therefore, it is my will and desire, and I do hereby order and direct that, unless the said loan of $2,000, together with the said note for $400, with lawful interest, shall be sooner paid and discharged by him, my said son George, to me or to my said executors, their successors or assigns, the same shall be deemed and taken, considered and accounted for and accepted by him for and in lieu, and in place of any and all said legacies and bequests, and in full therefor, to the amount of $2,500—the amount of the said two notes."

The case was referred to Washington B. Williams, Esq., advisory master, who filed the following conclusions :

I have again looked over the language of the will in this case, and the briefs of counsel, and remain of the view intimated at the close of the argument—that George's legacy of $500 and residuary share should be charged with the $2,500 which he had from his father.

As I understand it, the method is as follows : To the present amount of assets are to be added the claims against George, $2,500, and Theodore, $500, making total of estate to be distributed.

Next deduct all the debts and legacies, leaving the net residuary estate, one-quarter of which is to be credited to each of the four sons.

Credit George with his $500 of legacy and one-quarter of the residuary estate, and charge him with the $2,500 advanced, and interest on the $2,000 from the time he ceased paying it.

As to the interest on the other $500, it is clear that if it was merely an advancement, no interest would be charged under the general rules relating to advancements.

The only reason that can be suggested for charging him with interest on this advance is the language in the will, where the testator says :

" I direct that, unless the said loan of $2,000, together with the said note for $400, *with lawful interest*, shall be sooner paid " &c.

But I incline to think that, taking all the language relating to the $500 advancement together, the testator intended to treat it as an advancement only, and that the interest should not be charged on it, nor on the $400 note which was given to represent part of it.

It may be that this $400 note was drawn to carry interest; I do not remember its words, and this question can be left open * * * if it is deemed important.

The defendant appealed from the following part of the decree, to wit, that " it was the intention of the said testator in and by his last will, and is the true intent and meaning of the said will that, in the distribution of the said estate among the legatees under said will, the legacy or share of the said George R. Wilkins should be charged with the sum of $2,500, besides interest on $2,000 thereof, at six per cent. per annum, from the 1st day of May, 1878, to the date of this decree, being in all the sum of $8,593.33."

*Mr. Franklin M. Olds,* for appellant.

The will gives the appellant—

(1) A legacy of $500 against which any amount unpaid on these notes of $2,100 and $400 shall be off-set.

(2) An equal share with his three brothers in the residue of the estate without any deduction.

I. This is the plain meaning of the will:

(a) The testator first gives a special legacy of $500 to each of his sons.

(b) Further, the testator directs that the $400 note of the appellant, and the $500 note of Theodore, are to be considered as "making and constituting a portion of my said personal estate."

(c) The whole tenor of the will bears out the construction claimed by the appellant.

The term "legacy" does not *prima facie* include a gift of residue. *Theobald on Wills (2d ed.) 153,* citing *Ward* v. *Grey, 26 Beav. 485.*

II. The construction for which the appellant contends is in harmony not only with the language of the will, but also with the attending circumstances.

(a) The appellant had been unfortunate in business; had been compelled to go into bankruptcy, having previously borrowed from his father $2,500.

The testator's feelings toward the appellant were evidently those of deep affection.

Expressions of affection in a will may be considered in determining intention. *Roseboom* v. *Roseboom, 81 N. Y. 356.*

(b) The fact of the recital in the will that the appellant had paid interest on the $2,000 mortgage is significant, because this payment of interest by the appellant ceased soon after the date of the will, the last payment by the appellant being Aug. 24th, 1878, and this not in full, $40 having been paid by the testator. Also the testator, after the date of the will, paid $200 on account of the principal of this mortgage, and continued to pay the interest up to the date of his death.

(c) A legacy is always intended as a benefit to the legatee.

The testator knew that his whole estate consisted of these three houses; he knew their value, and he knew, therefore, that if this whole $2,500 was to be charged against the appellant, the appellant could receive nothing from the estate, and would be compelled to pay a debt from which he was discharged by the testator's consent before the will was made. *2 Roper on Leg. \*1066, \*1068; Black* v. *Whitall, 1 Stock. 572, 578, 579.*

A will should be so construed as not to disinherit the heir by loose implication. To disinherit, there must be an express devise or necessary implication. *33 N. Y. 561, 562.* This rule applies to next of kin in wills of personalty. *1 Jarm. on Wills 645.*

Slight indications in a will are decisive in favor of a legatee. *2 Perry on Trusts § 579.*

"Such a construction will, if possible, be adopted as will uphold the will, and bring it as near reason and good sense as practicable." *1 Redfield on Wills \*433–\*435.*

A clear gift cannot be cut down, except by something which,

with reasonable certainty, indicates the testator's intention to cut it down. *2 Jarm. on Wills 53.*

III. In order to construe the will as construed by the court below, we must—

1. Add, by construction, to the residuary clause, a direction to deduct from the defendant's share any amount that may remain due on these notes after deducting from them the $500 legacy.

2. Add to the will a clause that the note for $2,100 shall be deemed part of the testator's estate, although the testator is careful to say this of the $400 note only.

3. In that part of the will where the testator gives these $500 legacies to each of his sons, and directs that "the same be paid and allowed to them, and each of them, in the way and manner following," we must interline by construction the words "and also any other legacies herein given" after the words "the same."

4. Construe the word "*said*" to refer to what follows it in the will, as well as to what precedes it.

"Said" equals "aforesaid" (*Abb. Law Dict.*); "said" equals "*before mentioned*" (*Bouvier*).

5. Interpret "legacy" as referring to residue.

6. Suppose that the testator went through the form of giving to George without really intending him to receive anything.

7. Cut down and cut out a clear gift of residue.

But changes like these will not be made upon any mere conjecture, however reasonable, of what the testator meant, in opposition to the plain sense of the instrument as it stands. *Black v. Whitall, 1 Stock. 572, 582 ; Schouler on Wills § 478.*

The natural, ordinary meaning of words is not to be departed from in cases of doubt. *1 Redfield on Wills *448, *449.*

Transposition, substitution, or addition of words or clauses is never allowable, "unless in furtherance of the most unquestionable purpose of the testator.

The existence of a doubt is fatal to the change. *1 Redfield on Wills 470, 471, et seq.*

It must be clear, not only that the wrong word or phrase is used, but also what the right word or phrase is that is omitted. *2 Jarm. on Wills 60, 80.*

IV. In any view of the case the court below clearly erred in decreeing that the appellant should be charged interest on $2,000.

There is nothing in the will to warrant this. The whole amount, under any construction of the will, to be charged against the appellant is $2,500, the language being, "The same shall be taken, considered, accounted for and accepted by him, for and in lieu and in place of any of said legacies and bequests, and in full therefor, to the amount of $2,500."

All doubts must be resolved in favor of the testator having said exactly what he meant. *Burnet* v. *Burnet, 3 Stew. Eq. 595, 597; Black* v. *Whithall, 1 Stock. 572, 582, 583.*

V. To properly arrive at the true meaning of this will, it should be remembered that at the date of the testator's death, and at the date of the will, the appellant was not indebted to the testator.

(*a*) The testator was one of the creditors who consented to this discharge.

And it has been held that the assent of one of the creditors obtained by a promise on the part of the bankrupt that he would pay him all he owed him when he got able, created such a pecuniary obligation as would invalidate a discharge obtained on the faith of such promise. *Eking's Case, 4 N. J. L. J. 106, 108, 110.*

(*b*) But a discharge in bankruptcy is an extinction of the debt as a legal liability. *Stewart* v. *Reckless, 4 Zab. 427, 429, 430.*

A discharge in bankruptcy is something more than the barring of the right of action by the statute of limitations.

The latter takes away the remedy of the creditor; the former extinguishes the debt. Thus, a debt discharged by bankruptcy is not revived by a subsequent partial payment, nor by the payment of interest. *Stark* v. *Stinson, 23 N. H. 259; Allen* v. *Ferguson, 18 Wall. 1; Cambridge Institution* v. *Littlefield, 6 Cush. 210.*

The New Jersey statute (*Rev. p. 446 § 8*) provides that "no action shall be maintained against any person who may have been discharged as a bankrupt under the laws of the United States upon any promise made after such discharge to pay any

debt or demand from which he was or shall be released by such discharge," unless such promise be in writing. In regard to debts, the remedy of which is barred by the statute of limitations, our statute (*Rev. p. 595* § *10*), provides that " no acknowledgment or promise by words only shall be deemed sufficient evidence of a new and continuing contract whereby to take any case out of the operation of the act, or to deprive any person of the benefit thereof &c."—thus emphasizing the distinction between the complete release of the debt by bankruptcy and the mere presumption of payment implied by lapse of time.

The cases, therefore, following the leading case of *Courtenay* v. *Williams, 3 Hare 537, 551, 553,* which holds that debts barred by the statute of limitations can still be offset against a legacy, have no application to a debt discharged by bankruptcy.

The case of *Courtenay* v. *Williams,* and those which follow it are all put expressly on the ground that it is only the remedy that is barred; the right remains.

See *Denise* v. *Denise, 10 Stew. Eq. 165, 166,* where Vice-Chancellor Van Fleet refers to *Courtenay* v. *Williams,* and says that the principle that a debt may be offset against a legacy applies " even in a case where the remedy at law for the collection of his debt is barred by the statute of limitations." See, also, *2 Wms. on Exrs.* \**1306,* \**1307.*

*Messrs. Coult & Howell,* for respondent.

The opinion of the court was delivered by

BEASLEY, C. J.

This case, in the main, has been correctly decided by the master, but we think that he has erred in charging appellant with interest on the sum of $2,000. According to our construction of the will, $2,500 only should be deducted from the appellant's share.

The decree must be reversed so as to make this modification.

Inasmuch as the appellant's debt to the estate is so large, it is not perceived how he is to be benefited by this alteration of the

Delaware, &c., R. R. Co. *v.* Central Stock-Yard Co.

decree, and as he has failed in the substantial parts of the controversy raised by him, costs in this court are not allowed to him.

Let the decree be reversed to the extent stated.

*Decree unanimously reversed.*